O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>URIBE TUCKING, INC. dba ALEX MOVING AND STORAGE,<br><br>Defendant. | CASE NO. SACV 11-54-JST (MLGx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. Introduction

On February 8, 2011, Plaintiff United States Fire Insurance Company filed its First Amended Complaint, the operative complaint, asserting claims for breach of contract, account stated, and declaratory relief against Defendant Uribe Trucking, Inc. (First Am. Compl. ("FAC"), Doc. 5.) Before the Court is Defendant's Motion for Summary Judgment. (Mot., Doc. 41.) Plaintiff opposed, and Defendant replied. (Opp'n, Doc. 43; Reply, Doc. 53.) Having reviewed the papers and taken the matter under submission, the Court DENIES Defendant's Motion for Summary Judgment.

## II. Background

### A. Insurance Policies and the Audits

Defendant is engaged in the business of moving and storing household goods. (Def.'s Statement of Uncontroverted Facts ("SUF") ¶ 6, Doc. 41-1.) This dispute arises out of workers compensation policies Defendant purchased from Plaintiff for the period of January 2007 through January 2011. (Pl.'s Statement of Genuine Disputes ("SGI") ¶ 2, Doc. 43.) Only "employees" were covered under the terms of the policies, (SUF ¶ 36), and the terms of the policies did not change throughout the relevant policy periods. (*Id.*)

Plaintiff claims that Defendant improperly classified its forty truck drivers as independent contractors. (FAC ¶ 5.) Plaintiff contends that the drivers are actually "employees" within the meaning of California's Workers Compensation Act, and on that basis it seeks additional unpaid premiums for those allegedly misclassified workers.[1] (FAC ¶ 3; SGI ¶ 3.)

---

[1] In its FAC, U.S. Fire seeks $333,243 in unpaid premiums for the policy period covering January 2009 to January 2010, and $201,400 in unpaid premiums for the policy period of January 2010 to January 2011. (SUF ¶¶ 3-4.) In its Opposition, U.S. Fire clarifies that it is reducing the amount it is seeking based on proof of coverage that Uribe Trucking produced after mediation on April 9, 2013. It is now seeking $167,000 and $105,000 for each policy period, respectively. (SGI ¶¶ 3-4.)

It is undisputed that until at least 1998, Defendant hired employee truck drivers. (SGI ¶ 41.) Apparently, Defendant attempted to change that over time because—Defendant contends—by May 2010, Defendant had entered into "Independent Contractor Operating Agreements" (ICOA) with each of its 40 drivers. (SUF ¶ 8.) Plaintiff disputes this by pointing to purported deficiencies in some of the agreements.[2]

In or around April 2008 and March 2009, Plaintiff engaged Associated Insurance Services and Professional Casualty Assurances to perform independent audits of Defendant's facility for the purpose of determining if any additional premium was owed or if circumstances had changed regarding classification of Defendant's employees. (SUF ¶ 38.) The parties dispute whether the auditors determined in each instance that the drivers were properly classified as independent contractors, or whether the auditors merely relied on Defendant's assertion that the drivers were independent contractors. (*See* SGI ¶ 39.) In any event, those audits apparently resulted in no additional premiums being required.

Finally, one of Plaintiff's in-house auditors conducted an on-site audit of Defendant's facility on May 7, 2010, and the auditor determined that the truck drivers were actually employees and that Defendant therefore owed additional premiums. (Opp'n at 4-5; Mot. at 7; FAC ¶ 12.)[3]

---

[2] Plaintiff disputes that Defendant entered into independent-contractor agreements with each of its drivers by May 2010: "Some of the documents are not dated, some are incomplete, some are not signed and some show evidence of handwrioting [*sic*] discrepancies in signatures from the standpoint of a non-expert." (SGI ¶ 8.) Plaintiff then cites, unhelpfully, to three of the exhibits that are the independent-contractor agreements without pointing the Court to the purported deficiencies in those three exhibits. (*See id.*) The Court did note that Defendant's Exhibit 2 is apparently undated. (*See* Christine Uribe Decl. Ex. 2, Doc. 41-4.) The Court did not rely upon Plaintiff's counsel's handwriting analysis. (*See* John C. Doyle Decl. ¶ 7, Doc. 43.)

[3] The parties did not actually provide any *evidence* of this third audit. The Court could not locate on the docket or among the mandatory chambers copies provided the Maryellen Ross Declaration or the Request for Judicial Notice. While the Court is not presented with any evidence of this, that a third audit occurred is undisputed, and the Court will treat it as an undisputed fact.

**B. The Drivers**

It is "customary" in the moving and storage industry to use independent contractors, (SGI ¶ 9), and it is undisputed that the drivers provide Defendant "with the flexibility to handle the seasonal demands of its shipping business." (SUF ¶ 17.)

Beginning in 2007, Defendant's drivers purchased "Occupational Accident Plans" from TransGuard Insurance Company. For the audited policy period from January 29, 2010, each of the 40 drivers had Occupational Accident Plans from TransGuard. (SGI ¶¶ 34-35.)

Defendant's ICOA has an "Exclusive Possession" provision, which provides in part that, during the time the independent contractor provides services to Defendant, Defendant "shall have exclusive possession, control and use of the Equipment," and that the contractor "shall not operate the Equipment . . . for any motor carrier other than" Van Line or Defendant without Defendant's consent (and the satisfaction of other factors). (*See* Pl.'s Ex. 104 at USF000523, Doc. 43-1.)[4] However, that language is immediately followed by a significant clarification: "The foregoing declarations are made in order to comply with FMCSA [Federal Motor Carrier Safety Administration] regulations (49 C.F.R. § 376.12(c)(1)) and shall not be used to classify CONTRACTOR as an employee of CARRIER." (*Id.*) Indeed, 49 C.F.R. § 376.12(c) requires the "exclusive possession" language to be included in such agreements. Moreover, as the ICOA notes, § 376.12(c)(4) expressly provides:

> [n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lease. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. [§] 14102 and attendant administrative requirements.

---

[4] Page citations to "USF___" are to the bates numbered pages of the exhibits.

4

49 C.F.R. § 376.12(c)(4).

Defendant's agreements with the drivers are subject to automatic renewal and are terminable by either party "at any time for any reason" by "giving oral, followed immediately by written, notice to that effect . . . ." (Uribe Decl. Ex. 2 at 14, Doc. 45-1.)

Defendant does not own the trucks its drivers use. Rather, Defendant provides financing to the drivers, who purchase the trucks and make installment payments to Defendant. (Pl.'s Ex. 111 (Uribe Decl.) at 8:15-9:9, Doc. 43-2.) The drivers' vehicles do not have any logos, decals, or other Uribe Trucking identifying marks. However, Defendant's marks are on the trailers, which Defendant leases to the drivers. (Uribe Dec. ¶ 15, Doc. 41-3.) Defendant does not require the drivers to wear Uribe Trucking uniforms, merchandise, or monikers. (SUF ¶ 22.)[5]

Christine Uribe, the owner, treasurer, and secretary of Uribe Trucking, testified that "[e]ach driver was free to negotiate the terms of their service contracts with Uribe Trucking." (Uribe Decl. ¶ 8, Doc. 41-3.)[6] She also testified that drivers are at liberty to take on additional loads to fill trailers that are less than full. (SUF ¶ 15.)

At the end of each year, Defendant issues each driver a Form 1099 for their trucking services. (SUF ¶ 18.) The drivers all possess the "particular skill" to drive semi-trucks, and they are all licensed to do so by the state of California. (SUF ¶¶ 23-24.)

The drivers pay their own taxes and business expenses. (SGI ¶ 26.) Moreover, Christine Uribe testified that her company advises the drivers that they may hire their own

---

[5] Plaintiff disputes this: "Each driver is subject to payment of chargeback for uniforms for contractor, driver and helper(s) set forth in Uribe's or 3d party's Uniform Price List." (SGI ¶ 22.) That sentence is not fully intelligible. Plaintiff cites Exhibit 103, attachment B. (*See id.*) But based on the Court's review, Exhibit 103 does not have an attachment B. (*See* Pl.'s Exhibit 103, Doc. 43-1.) That unauthenticated document lists forty-one names (presumably Defendant's drivers) and has an "Amount" column that is redacted. Nothing on that page identifies the data as referring to charges for uniforms. In short, Plaintiff has failed to dispute that fact.

[6] Plaintiff purports to dispute this fact, but it did not present any evidence actually disputing it. Rather, it cited generally to the agreements the forty drivers entered into and avers simply: "Contract itself demonstrates that the parties do not have equal bargaining power." (SGI ¶ 12.)

helpers, and that some do in fact hire drivers to drive their vehicles. (Uribe Decl. ¶ 18.)[7] Uribe further testified that the drivers are free to accept or decline shipments from Uribe Trucking and/or other carriers. (SUF ¶ 30.)

Defendant's drivers control the route, timing and course of the deliveries. (SUF ¶ 32.) Defendant pays its drivers based on the deliveries. Defendant first deducts the relevant installment amount and insurance premium before remitting payment for a particular delivery. (SGI ¶ 33.)

### III.    Legal Standard

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

---

[7] Plaintiff purports to dispute this; in fact, it merely objects to this testimony: "Absence of available evidence not explained, [*sic*] no competent evidence to support the fact." (SGI ¶ 27.) As the owner of Uribe Trucking, Christine Uribe is competent to testify as to the policies her company advises its drivers of, as well as the fact that some of her company's drivers do in fact hire their own drivers.

1 Furthermore, "Rule 56[(a)]⁸ mandates the entry of summary judgment . . . against a party
2 who fails to make a showing sufficient to establish the existence of an element essential to
3 that party's case, and on which that party will bear the burden of proof at trial." *Celotex*
4 *Corp.*, 477 U.S. at 322.  Therefore, if the nonmovant does not make a sufficient showing to
5 establish the elements of its claims, the Court must grant the motion.  *See In re Oracle*
6 *Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth
7 with evidence from which a jury could reasonably render a verdict in the non-moving
8 party's favor").

**IV.   Discussion**

   **A. Employee / Independent Contractor Legal Standard**

Defendant's sole argument in support of its Motion for Summary Judgment on all of Plaintiff's claims is that its forty drivers are independent contractors as a matter of law. The Court of Appeals for the Ninth Circuit recently clarified the framework for determining independent contractor / employee status within the framework of a summary judgment motion.  *See Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010).

The plaintiffs in Narayan were truck drivers who worked for the defendant—a "global transportation, supply chain management and information services company." *Id.* at 897.  The defendant (EGL) had classified its drivers as independent contractors, and the plaintiffs brought suit, claiming they had been deprived of certain benefits under the California Labor Code, including unpaid overtime wages in light of that classification. The defendant moved for summary judgment on the ground that, pursuant to agreements it

---

⁸ Rule 56 was amended in 2010.  Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'"  Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

1  had entered into with plaintiffs, the plaintiffs were independent contractors. The district
2  court granted the motion, and the Ninth Circuit reversed.

3   The *Narayan* court began by explaining that "two special circumstances [] are
4  relevant to the application of [the summary judgment standard]" in a case such as this. *Id.*
5  at 900. The first such "special circumstance" is the presumption of "employee" status.
6  "As the Supreme Court of California has held, '[t]he rule . . . is that the fact that one is
7  performing work and labor for another is prima facie evidence of employment and such
8  person is presumed to be a servant in the absence of evidence to the contrary.'" *Id.*
9  (quoting *Robinson v. George*, 16 Cal. 2d 238, 242 (1940)) (second alterations in original).[9]
10 In short, the drivers are *presumed* to be employees of Defendant, so in the context of a
11 summary judgment motion, Defendant "would have to establish that a jury would be
12 compelled to find that it had established by a preponderance of the evidence that the
13 [d]rivers were independent contractors." *Id.* The Ninth Circuit then emphasized that
14 "[t]his hurdle is particularly difficult for [the defendant] to overcome in light of the second
15 special consideration in this case, namely the multi-faceted test that applies in resolving the
16 issue whether the Drivers are employees." *Id.*

17  "The Supreme Court of California has enumerated a number of indicia of an
18 employment relationship, the most important of which is the 'right to discharge at will,
19 without cause.'" *Id.* (quoting *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48
20 Cal. 3d 341, 350 (1989)). The *Borello* court also endorsed the following factors, taken
21 from the Restatement (Second) of Agency:

---

[9] The question may arise whether the presumption applies when the plaintiff is not the employee. Significantly, the plaintiff in *Robinson* was injured when he was struck by a car driven by the defendant Melvin George. 16 Cal. 2d at 240. The trial court nonsuited the plaintiff on his claim against defendant Citizen-News Company, concluding that George was an independent contractor for, not an employee of, Citizen-News. *Id.* In that context, the California Supreme Court announced the "employee" presumption and reversed the nonsuit in favor of defendant Citizen-News. *Id.* at 247.

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Borello*, 48 Cal. 3d at 351; *see also Narayan*, 616 F.3d at 900 (quoting *id.*).  Finally, the *Borello* court "approvingly cited five factors adopted by cases in other jurisdictions":

> (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business.

*Narayan*, 616 F.3d at 900-01 (quoting *Borello*, 48 Cal. 3d at 354-55).

The *Narayan* court then explained how the relevant factors are to be applied: "All factors were held to be 'logically pertinent to the inherently difficult determination whether a provider of service is an employee or an excluded independent contractor.' Nevertheless, 'the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations.'" *Id.* at 901 (internal citations omitted). "We must assess and weigh all of the incidents of the relationship with the understanding that no one factor is decisive, and that it is the rare case where the various factors will point with unanimity in one direction or the other." *Id.* (internal citations and quotation marks omitted).

Finally, the *Narayan* court explained: "we cannot readily say . . . that the ultimate conclusion as to whether the workers are employees or independent contractors is one of law.  The drawing of inferences from subordinate to ultimate facts is a task for the trier of

1 fact—if, under the governing legal rule, the inferences are subject to legitimate dispute."
2 *Id.* (internal citation and quotation marks omitted).

3     With the relevant standard set forth, the Court turns to the application of the factors
4 to the instant case.

### B. Analysis

6     Summary judgment is not appropriate in this case. First, while Defendant entered
7 into independent-contractor agreements with the parties, the California Supreme Court
8 made clear that "[t]he label placed by the parties on their relationship is not dispositive,
9 and subterfuges are not countenanced." *Borello*, 48 Cal. 3d at 349; *see also Narayan*, 616
10 F.3d at 903-04 ("That the [d]rivers here had contracts 'expressly acknowledging that they
11 were independent contractors' is simply not dispositive under California's test of
12 employment.").

13     Next, as described above, Defendant's agreements with the drivers are subject to
14 automatic renewal and are terminable by either party "at any time for any reason by giving
15 oral, followed immediately by written, notice to that effect . . . ." (Uribe Decl. Ex. 2 at 14,
16 Doc. 45-1.) The *Narayan* court found such a term to be *significant*: "Significantly, the
17 contracts signed by the plaintiff [d]rivers contained automatic renewal clauses and could
18 be terminated by either party upon thirty-days notice or upon breach of the agreement.
19 Such an agreement is a *substantial indicator* of an at-will employment relationship."
20 *Narayan*, 616 F.3d at 902-03 (gathering cases (emphasis added)).[10]

---

[10] Defendant relies heavily upon *State Compensation Insurance Fund v. Brown*, 32 Cal. App. 4th 188 (1995). *Brown* is markedly similar. That case was brought by a workers compensation insurer against an employer for unpaid workers compensation premiums based upon the employer's classification of its drivers as independent contractors. The *Brown* court affirmed the trial court's grant of summary judgment in favor of the defendant, concluding as a matter of law the defendant's drivers were independent contractors. The *Brown* court concluded that the fact that the independent-contractor agreements in that case could be terminated at will by either party was "consistent with" at-will employment or independent contractor status. Yet the *Narayan* court concluded that fact weighed significantly in favor of at-will employment, and it
(footnote continued)

Because Defendant is in the *business* of transporting and storing household goods, there is, at a minimum, a legitimate inference that the trucking services the drivers provide are "essential." *Cf. Narayan*, 616 F.3d at 901 (holding that the "delivery services provided by the [defendant's] drivers were an essential part of the regular business of [the defendant]").[11]

Moreover, while the drivers were permitted to determine the route they would take, the *Narayan* court accorded this little or no weight: "the ability to determine a driving route is simply a freedom inherent in the nature of the work and not determinative of the employment relation." Narayan, 616 F.3d at 904 (internal citation and quotation marks omitted). The court continued: "[The] cases simply reflect the common-sense rule that, '[i]f an employment relationship exists, the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved does not change the character of the relationship, particularly where the employer has general supervision and control.'" *Id.* (quoting *Air Couriers Int'l v. Emp't Dev. Dep't*, 150 Cal. App. 4th 923, 934 (2007) (second alteration in original)). Finally, Defendant provides its drivers with the trailers (via lease), and those trailers feature Defendant's logo. (Uribe Decl. ¶ 15.)

Of course, some of the relevant factors are strong indicia of independent contractor status. For example, it is undisputed that the drivers possess a specialized skill and require a special driver's license to operate their trucks. *See Brown*, 32 Cal. App. 4th at 202-03 ("truck driving—while perhaps not a skilled craft—requires abilities beyond those possessed by a general laborer [] or, indeed, possessors of ordinary driver's licenses").

Nevertheless, summary judgment is inappropriate in this case because at least some of "[t]he inferences here are subject to legitimate dispute." *Narayan*, 616 F.3d at 901.

---

acknowledged that the *Brown* court held otherwise. *See Narayan*, 616 F.3d at 903-04. Accordingly, in the summary judgment context, *Brown* has limited persuasive value in this Court.

[11] The defendant in *Brown* was a "broker" in "transporting intermodal freight." *Brown*, 32 Cal. App. 4th at 195.

11

This is particularly true in light of the presumption of employment, and the presence of a "substantial indicator" of employment—Defendant's unfettered right to terminate at any time. *See id.* at 903-04.

Defendant's reliance on *Ruiz v. Affinity Logistics Corp.*, 887 F. Supp. 2d 1034 (S.D. Cal. 2012), is misplaced because the court rendered its decision in that case following a bench trial, where the court was free, and required, to weigh evidence, make credibility determinations, and draw inferences. Defendant also relies upon *Taylor v. Waddell & Reed, Inc.*, No. 09-cv-02909 AJB (WVG), 2013 U.S. Dist. LEXIS 14939, *1 (S.D. Cal. Feb. 1, 2013). The Court is not persuaded by that decision because it did not discuss the *Narayan* decision in applying the *Borello* factors. *See id.* at *16-*22.

## V. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment.

DATED: July 16, 2013

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE